# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* ESTATE OF RICHARD T. GORDON.

---

MICHAEL G. GORDON,

        Appellant,

v

KATHLEEN L. GORDON-BEATTY, JUSTIN A.
GORDON, and KELSEY A. GORDON,

        Appellees,

and

LAUREEN M. GORDON, STACY L. DAVID,
NICOLE M. GORDON, MELISSA J. GORDON,
HUNTINGTON NATIONAL BANK, and J.
RUSSELL LABARGE, JR., Successor Personal
Representative of the ESTATE OF RICHARD T.
GORDON,

        Other Parties.

UNPUBLISHED
November 8, 2018


No.   339296
Macomb Probate Court
LC No.   2009-195839-DA

---

*In re* RICHARD T. GORDON REVOCABLE
TRUST AGREEMENT.

---

HUNTINGTON BANK, LAUREEN M.
GORDON, and J. RUSSELL LABARGE, JR.,
Successor Trustee of the RICHARD T. GORDON
REVOCABLE TRUST AGREEMENT,

        Other Parties,

and

JUSTIN A. GORDON, KATHLEEN L.

-1-

GORDON-BEATTY, and KELSEY A. GORDON,

    Appellees,

v                                                    No.  339297
                                                     Macomb Probate Court
MICHAEL G. GORDON,                                   LC No.  2012-205162-TV

    Appellant.

---

*In re* LAUREEN  M.  GORDON  REVOCABLE
TRUST.

---

KATHLEEN L. GORDON-BEATTY, JUSTIN A.
GORDON, and KELSEY A. GORDON,

    Appellees,

and

FAIRLANE TOOL COMPANY, INC.,
DOUGLAS DOLD, DOLD SPATH & KRIAZIS,
P.C., PHILIP E. BERTELSEN, NICOLE M.
GORDON, STACY L. DAVID, MELISSA J.
HESSELL THERESA L. HUNRATH, JOHN R.
GORDON, JULIE GORDON, HUNTINGTON
BANK, and J. RUSSELL LABARGE, JR.,
Successor Trustee of the LAUREEN M.
GORDON REVOCABLE TRUST,

    Other Parties,

v                                                    No.  339299
                                                     Macomb Probate Court
MICHAEL G. GORDON,                                   LC No.  2014-213254-TV

    Appellant.

---

*In re* ESTATE OF LAUREEN M. GORDON.

---

MICHAEL G. GORDON,

-2-

v

KATHLEEN L. GORDON-BEATTY, JUSTIN A.
GORDON, and KELSEY A. GORDON,

       Appellees,

and

STACY L. DAVID, NICOLE M. GORDON,
MELISSA J. GORDON, and J. RUSSELL
LABARGE, JR., Successor Personal
Representative of the ESTATE OF LAUREEN M.
GORDON,

       Other Parties.

No. 339320
Macomb Probate Court
LC No. 2014-214942-DA

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

At issue in this appeal is the challenge of one heir to the arbitrator's allocation of trust and estate assets to another set of heirs, and the trust administrator's subsequent distribution of those assets. Our review of the arbitrator's decision is very limited and we discern no ground for court interference. We affirm.

## I. BACKGROUND

Richard Gordon died in 2008, leaving a sizeable estate. He was survived by his wife Laureen and their four children—Michael, Richard Jr., Mark, and Kathleen. Mark died in 2009, survived by his two children—Justin and Kelsey. A family dispute arose over the terms of Richard's trust, principally related to the operation of a family business—Fairlane Tool Company. The dispute pitted Laureen and Michael against Kathleen, Justin, and Kelsey.[1] In February 2012, the parties entered a facilitation agreement, which was incorporated into an August 29, 2012 court order, providing in relevant part:

> 3. The asset baskets for Michael Gordon, Sr., and Justin Gordon/Kelsey Gordon shall be allocated and equalized to maximize tax savings.

---

[1] Kathleen was awarded a cash payout from her parents' estates and trusts and Richard Jr.'s position is not relevant to this appeal.

\* \* \*

8. Any dispute regarding the allocation of assets or equalization shall be resubmitted for binding decision by Gene Esshaki.

\* \* \*

14. The Products/Fixtureworks Division of Fairlane Tool will be spun off under Section 355 and 368(a)(1)(D) of the Internal Revenue Code.

15. An agreement shall be implemented to provide full management authority of Fairlane Products to Justin Gordon and Kelsey Gordon, and of Fairlane Tool to Michael Gordon, with termination on certain agreed circumstances.

16. Stock of Fairlane Products equal to one-third (1/3) of Laureen Gordon's available estate/gift tax exemption will be gifted equally to Justin and Kelsey Gordon in an appropriate timely manner.

17. Stock of Fairlane Tool equal to one-third (1/3) of Laureen Gordon's available estate/gift tax exemption will be gifted to Michael Gordon in an appropriate timely manner.

In a prior appeal, this Court rejected Michael's argument that the parties did not actually reach a settlement agreement in 2012. *In re Richard T Gordon Revocable Trust Agreement*, unpublished per curiam opinion of the Court of Appeals, issued March 27, 2014 (Docket No. 312884).

Laureen died in October 2014, shortly after the prior appeal concluded. In November 2014, the parties appeared in court to address their unresolved disputes, which now included Laureen's trust and estate. They agreed to submit "all issues" related to the estates and trusts of both Richard and Laureen to arbitration. On January 23, 2015, the probate court entered an order incorporating the parties' agreement and referring all matters to binding arbitration, stating in relevant part as follows:

IT IS FURTHER ORDERED that, based upon stipulation of counsel for the interested persons made in open court on November 21, 2014, any disputes pending before this Court in this matter or in related matters (files 2014-214942-DE, 2014-213254-TV, and 2009-195839-DE) are referred for binding arbitration before Gene J. Esshaki as arbitrator, except the Court reserves for decision by itself the appointment of a Successor Trustee in this matter (and in file 2014-213254-TV) if the interested persons are unable to agree.

\* \* \*

IT IS FURTHER ORDERED that it is the Order of this Court, based upon the stipulation of counsel made in open Court on November 21, 2014, that the terms of the Court's Order of August 29, 2012 shall apply to this file (2012-205162-TV) and to the other related files (2014-214942-DE, and 2014-213254-

TV, and 2009-195839-DE) and the Order of August 29, 2012 shall be implemented with any issues resolved through binding arbitration by Gene J. Esshaki.

IT IS FURTHER ORDERED that, based upon the stipulation of counsel made in open Court on November 21, 2014, the claims submitted to Gene J. Esshaki for binding arbitration include but are not limited to, the following:

A. Any and all issues under the August 29, 2012 Order (implementing the Facilitation Agreement).

B. Any and all claims involving conflicts of interest, attorneys' fees, damages, and monetary issues including claims for sanctions.

Arbitration proceedings were conducted in 2015, and on March 3, 2016, the arbitrator issued his decision and award. The arbitrator's award included the following:

Needless to say, subsequent to execution of Exhibit A and the [2012] Settlement Order, numerous additional issues have arisen between the parties requiring resolution by the undersigned pursuant to the binding arbitration clause. All parties have stipulated that, with the exception of issues involving two (2) Irrevocable Life Insurance Trusts, the undersigned has full legal and equitable authority to resolve all disputes between the parties and to fashion remedies to implement such resolutions.

Relevant to this appeal, the arbitrator divided the remaining assets between Michael and Justin/Kelsey. The arbitrator followed the terms of the 2012 agreement and split Fairlane Products (including Fixtureworks) into a separate entity from Fairlane Tool. Justin and Kelsey were awarded Fairlane Products, and Michael was awarded Fairlane Tool. The arbitrator stated:

Under Exhibit A, the remaining assets of Richard T. Gordon and Laureen M. Gordon in either of their respective Estates and/or Trusts were to be allocated and distributed, subject to full estate tax payments, to Michael Gordon, on the one hand, and Justin and Kelsey Gordon, on the other hand. Exhibit A provides that Fairlane Products and Fixtureworks, a division of Fairlane Tool, would be established as a separate legal entity, the ownership of which was to be distributed exclusively to Justin and Kelsey Gordon. After this split-off and distribution, all of the stock of Fairlane Tool was to be distributed to Michael Gordon. Exhibit A made additional specific distributions to either Michael and Justin and Kelsey of certain real property. In addition to all of the foregoing, other assets remained in the Trusts of Laureen Gordon that are required to be equalized and distributed to Michael Gordon and Justin and Kelsey Gordon.

Michael thereafter moved to vacate the arbitrator's award on the ground that he exceeded his authority and also objected to the administration of the trusts. The probate court concluded that the arbitrator acted within the scope of his authority and found no basis for Michael's objections to the administration of the trusts. Accordingly, the court denied Michael's motion to vacate and confirmed the arbitration award.

II. ANALYSIS

Michael argues that the probate court erred by denying his motion to vacate the arbitration award. We review de novo the trial court's decision. *City of Ann Arbor v American Federation of State, Co & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009).

"Judicial review of an arbitrator's decision is very limited." *Mich State Employees Ass'n v Dep't of Mental Health*, 178 Mich App 581, 583; 444 NW2d 207 (1989). "A court may not review an arbitrator's factual findings or decision on the merits." *Id.* In *Hope-Jackson v Washington*, 311 Mich App 602, 613-614; 877 NW2d 736 (2015), this Court observed:

> Reviewing courts can only act upon a written record. There is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required. Thus, from the perspective of the record alone, a reviewing court's ability to review an award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such documentation as the parties agree will constitute the record. [*DAIIE v Gavin*, 416 Mich 407, 428-429; 331 NW2d 418 (1982).]

The *DAIIE* Court further explained:

> In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law." In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable. [*Id.* at 429.]

To merit vacation of an arbitration award, an error of law must be evident on the face of the award and

> be so egregious, . . . so materially affect the outcome of the arbitration, . . . so plainly demonstrate a disregard of principles fundamental to a fair resolution of the dispute, or . . . so unequivocally generate a legally unsustainable result, that [the erroneous legal conclusion] cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority. [*Id.* at 429-430.]

"By 'on its face' we mean that only a legal error 'that is evident without scrutiny of intermediate mental indicia' will suffice to overturn an arbitration award" because we may not "engage in a review of an 'arbitrator's "mental path leading to [the] award." ' " *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (quotation marks and citations omitted) (alteration in original).

-6-

Michael argues that the arbitration award should be vacated under MCR 3.602(J)(2)(c) because the arbitrator exceeded his powers. "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). "Arbitration agreements are generally interpreted in the same manner as ordinary contracts." *Bayati v Bayati*, 264 Mich App 595, 599; 691 NW2d 812 (2004). Accordingly, an arbitration agreement must be enforced according to its terms to effectuate the parties' intentions. *Id*. A court must be careful to limit its review to determining only if the arbitrator exceeded his contractual authority and jurisdiction. *Mich State Employees Ass'n*, 178 Mich App at 583. See also *Washington*, 283 Mich App at 672.

Preliminarily, Michael inaccurately suggests that the parties' 2012 settlement agreement was the only source of the arbitrator's authority. The arbitrator's authority also derived from the probate court's January 23, 2015 order, which granted broad authority to resolve "any disputes" arising from matters related to both Richard's and Laureen's estates and trusts. The 2015 order effectively modified the scope and terms of arbitration set forth in the 2012 settlement agreement, giving the arbitrator authority to address any issues that arose after the 2012 agreement was executed, including the distribution of Laureen's estate and trust. Thus, there is no merit to Michael's claim that the arbitrator was prohibited from distributing assets as of 2012, assets that were intended to be retained by Laureen for her support.

At the time of the 2012 settlement agreement, Laureen was still alive, so the distribution of her estate and trust was not at issue. After Laureen's death, the parties agreed on the record that the scope of arbitration would include "all issues" involving "all trusts and estates." Consistent with this agreement, the probate court's 2015 order referring the matter to arbitration provided that the scope of arbitration would include "any disputes pending before this Court in [Richard's trust case] *or in related matters*" (emphasis added), and then specifically referenced the file numbers for Richard's estate case and for both Laureen's trust and estate cases. It is clear that the parties agreed in November 2014 that all pending issues related to the monetary distribution of both Gordon's and Laureen's estate and trust were to be submitted to arbitration.

On appeal, Michael argues that the arbitrator did not give effect to ¶ 16 of the 2012 agreement. The 2012 settlement agreement provided that Michael and Justin/Kelsey were to equally share the remaining assets in a way that maximized tax savings. The agreement further provided that Fairlane Products was to be set up as a separate entity, so that Justin and Kelsey could operate it separate from Michael. The plan was for Michael to own and operate Fairlane Tool. However, because the 2012 agreement set aside some of the stock of both entities for Laureen's support, those assets would also be subject to distribution after Laureen's death. It is apparent that any remaining stock interest held by Laureen should have been distributed through arbitration consistent with the plan to spin off Fairlane Products from Fairlane Tool. The arbitrator divided these entities consistent with the 2012 agreement, although some of its terms no longer applied after Laureen's death.

Contrary to Michael's argument, the arbitrator did not "ignore" ¶ 16. Rather, after Laureen's death, the terms in ¶ 16 were no longer relevant to the overall distribution of all assets. Indeed, at the hearing on Michael's motion to vacate the arbitration award, Michael's counsel agreed that "no party challenged paragraphs 16 and 17" during the arbitration proceedings.

In support of his argument, Michael relies on a memorandum prepared by the successor trustee, J. Russell LaBarge, Jr., in May 2016, in which he explained that ¶¶ 16 and 17 were intended as limited transfers of the companies as current gifts, while Laureen retained the remaining trust assets until her death. As explained earlier, however, after Laureen died, the parties agreed that the arbitrator would resolve other issues raised by her trust and estate, which meant that the arbitrator was free to distribute the assets intended to be retained by Laureen in 2012, as set forth in ¶ 16. Thus, the memorandum does not support Michael's argument that the arbitrator lacked the authority to award Laureen's assets as part of the arbitration.

While Michael may be correct that ¶ 16, as originally implemented in 2012, intended for Justin and Kelsey to receive a smaller share in Fairlane Products from Laureen's interest, the limits on that award were no longer operative after Laureen died. After her death, the assets still controlled by Laureen were subject to distribution and the 2015 order clearly provided that the scope of arbitration would include all issues related to the estates and trusts of both Richard and Laureen. The arbitrator acted within his authority by following the intent of the parties' 2012 settlement agreement in dividing the companies between Michael and Justin/Kelsey, including any interests previously retained by Laureen, but now subject to distribution as part of her estate or trust.

In addition, the arbitrator did not exceed his authority by awarding Justin and Kelsey a 100% interest in Fairlane Products as of February 29, 2012. This provision did not involve a retroactive award of that asset to Justin and Kelsey, contrary to Laureen's interests. Instead, it appears that the parties agreed that the assets would be valued as of 2012 because that is when the assets were actually evaluated. Indeed, the arbitrator made a similar award of Fairlane Tool to Michael without challenge.

For these reasons, the probate court did not err by denying Michael's motion to vacate the arbitration award. MCR 3.602(J)(5) provides that "[i]f the motion to vacate [the arbitration award] is denied and there is no motion to modify or correct the award pending, the court shall confirm the award." Accordingly, once the probate court denied Michael's motion to vacate the arbitration award, the court was required to confirm it.

Michael's objections to the successor trustee's administration of the trusts involved his claim that the 2012 settlement agreement and the 2015 order for arbitration did not carry out the intent of the trusts or the court's orders. Because the parties agreed to arbitrate their disputes and because, as discussed earlier, the arbitrator acted within the scope of his authority, Michael's challenges to the administration of the trusts lack merit.

We affirm.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher